ARK FOO et al. v. UNITED STATES. HOO FONG et al. v. SAME. JUNG MAN v. SAME.

(Circuit Court of Appeals, Second Circuit. February 23, 1904.)

Nos. 86, 87, 119.

1. CHINESE—EXCLUSION—FINDINGS—REVIEW.

Where a commissioner's determination rejecting the evidence of citizenship in a proceeding for the deportation of a Chinese alien on the ground that he did not believe the testimony that the defendant was only 29 years of age was affirmed by the district judge, and there is nothing in the record to show that the commissioner's conclusion as to defendant's age was incorrect, the ruling will be affirmed.

2. SAME.

Where a witness to the citizenship of a Chinese alien testified that defendant was born in the United States, but was unable to state any facts concerning the village where it was alleged defendant was born, and where the witness testified he lived for 18 years—the only event which he recalled with certainty being defendant's birth—and, in answer to a question as to his business, stated that he did "odd jobs and loaf," a finding of the commissioner rejecting his testimony, affirmed by the district judge, will be affirmed on appeal.

3. SAME—OFFER TO BE SWORN.

Where a witness to the citizenship of an alleged Chinese alien was not impeached or discredited, but was clear and straightforward, and no criticism was made with regard to the same by the commissioner, and the alleged alien was not requested to be sworn in his own behalf, his failure to offer himself as a witness was not a sufficient reason for ordering him deported.

Lacombe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of New York.

These are appeals from decisions of the District Judge of the Northern District of New York, affirming orders of United States commissioners adjudging that the appellants are Chinese laborers unlawfully

¶ 1. Citizenship of Chinese see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

within the United States and ordering their deportation to the Empire of China. . The appeals were argued together.

R. M. Moore, for appellants.

Taylor L. Arms, Asst. U. S. Atty.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. · In the case of Ark Foo and Ark Toy the commissioner states his reason for rejecting the evidence of citizenship offered in their behalf as follows: ·

"The two defendants were in court and the witness swears that the defendant Ark Foo is twenty-nine years of age. I was satisfied from said defendant's appearance that he was certainly over forty years of age and therefore placed no reliance in the witness' story."

The district judge held that the commissioner's determination in this regard should not be disturbed on appeal. We concur in this ruling. There is nothing in the record to show that the conclusion as to Ark Foo's age was incorrect. At the argument a photograph of Ark Foo purporting to have been taken in December, 1903, was handed to the court. Even though we were permitted to consider this photograph it proves nothing that enables us to say that the commissioner was wrong in his conclusion that Ark Foo is over 40 years of age. To the commissioner is delegated the duty to determine, in the first instance, these questions of fact, and if it were perfectly apparent to him, as he says it was, that the appellants' witness had falsely stated the age of one of them the commissioner was justified in rejecting the entire testimony.

In the case of Hoo Fong and Lee Cheong Ging the commissioner declined to give weight to the testimony of the appellants' witness, called to establish their citizenship in the United States, because he was utterly unable to state any facts concerning the village of Martinez where it is alleged the appellants were born and where the witness testified he lived for 18 years. The only events which he recalled with certainty during this long period were the births of the appellants. In answer to the question, "What is your business?" he answered, "Do odd jobs and loaf." He was evidently a worthless individual and because of the inherently improbable nature of his story the commissioner disregarded his testimony. The district judge agreed with the commissioner and we are convinced that this court should not disturb these findings.

· In the case of Jung Man an entirely different proposition is presented. A witness was called who established without contradiction the citizenship of the appellant. The witness was not impeached and there was nothing in his testimony to discredit it. It was a clear, straightforward statement. The commissioner makes no criticism of the testimony or of the witness. He does not suggest that the testimony is unsatisfactory or contradictory, or that there was any point requiring explanation. Neither he nor the district attorney requested the appellant to be sworn, as was done in Ex parte Sing (C. C.) 82 Fed. 22, and in the recent case of United States v. Leung Shue (D. C.) 126 Fed. 423. There can, therefore, be no escape from the conclusion

that the commissioner would have accepted the appellant's testimony and would have ordered his discharge were it not for the fact that he failed to take the witness stand. The logical deduction from this ruling, stated bluntly, is that after a Chinese person has proved himself a citizen and entitled to remain in the United States, the commissioner may conclude that he is not a citizen and that he must be deported simply because he was not sworn as a witness; and this, too, in a case where no one requested him to be sworn and where he could have no personal knowledge of the facts in controversy. We are confronted with the naked question, where a Chinese person seeks to enter the United States on the ground that he is an American citizen, and has established his citizenship by unimpeached testimony, does his failure to be sworn constitute a sufficient reason for ordering his deportation? It is difficult to understand upon what theory the affirmative of this proposition can be maintained. Of course, numberless cases have arisen, and may arise in the future, where the failure of the defendant to testify may throw suspicion of the gravest character upon his defense as where, for instance, his own declarations that he was born in China are placed in evidence against him. But the case at bar is not embarrassed by any complications of this character. The crucial question was whether or not the appellant was born in the United States. From the very nature of the issue he could have no positive knowledge upon this point. Necessarily his testimony must have been hearsay. The record shows that he was born in Albany, Or., twenty-six years ago and that he left the United States and returned to China when he was 13 years of age. It is, therefore, quite apparent that he could have given no evidence which would have thrown any light upon the time and place of his birth, and yet the fact that he stood mute is the sole reason for his deportation. Indeed, the district attorney quotes with approval the language of a reported case to the effect that the claim of a Chinese person that he is entitled to citizenship "must be substantiated by better testimony respecting his birth in the United States than that of himself, based solely upon what his parents told him and the hearsay testimony of other witnesses." The commissioner suggests that a boy of 13 would be able to state "innumerable things with reference to his life in this country, the house and village where he lived and his voyage back to China, which would materially assist the court in arriving at the truth." Just what these things are is not apparent, especially when it appears that Albany is a "small town with no names or numbers to the streets." As to the voyage it was in all probability as eventless as those taken by others of appellant's countrymen. It is undoubtedly true that a shrewd cross-examiner might have involved appellant in contradictions upon these collateral matters, but we see no reason why he should voluntarily subject himself to such an ordeal. If the rule contended for be sustained the defendants, in cases like the one at bar, will find themselves confronted by a dilemma which impales them upon one horn or the other. Whether they testify or fail to testify the result is the same—deportation. In United States v. Leung Shue, supra, the case was stronger for the government, in one respect at least, than the case in hand, for the reason that the district attorney requested the defendants to take the

stand in their own behalf which, by the advice of counsel, they refused to do.. The judge there clearly states the rule as we understand it to be. He says:

"They [the defendants] have proved their case by a credible and credited witness, and there is neither law nor reason for requiring defendants to take the stand and submit to examination in such a case upon pain of deportation."

See, also, United States v. Hung Chang (D. C.) 126 Fed. 400, 405. We think the commissioner should have discharged the appellant.

It follows that the decision in the case of Ark Foo and Ark Toy and in the case of Hoo Fong and Lee Cheong Ging must be affirmed.

In the case of Jung Man the decision is reversed and the case is remanded to the District Court with instructions to discharge the defendant.

LACOMBE, Circuit Judge (dissenting). In the first two causes I concur in the result, but dissent from the methods by which conclusion is reached, and in the third cause dissent in toto. In each of these causes the majority of this court has examined, discussed, and analyzed the testimony given before the commissioner, and has reached a conclusion in accordance with its own impressions as to the credibility of the witnesses. I do not understand that this court has any such function to discharge. Certainly, without any opportunity to see the witness and the defendant, or to observe in what way the testimony is given, it would be very ill equipped to discharge such function. In Chin Bak Kan v. U. S., 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121, the Chinese person had set up a claim of citizenship, and a hearing at which witnesses were examined was had before a United States commissioner. That officer held that the Chinese person had "not made it appear to me [the commissioner] that he was a subject or citizen of any other country than China," and adjudged that he be removed from the United States. Appeal was taken to the judge of the District Court, who affirmed the judgment, and, the construction of a treaty being involved, appeal was taken direct to the Supreme Court. After indicating that it had power to dispose of the entire case, that court says:

"But as the jurisdiction of the commissioner is sustained, we are of opinion that we cannot properly re-examine the facts already determined by two judgments below. That is the general rule, and there is nothing to take this case out of its operation, and, on the contrary, the conclusion is a fortiori justified. The same reasoning in respect to the authority to exclude applies to the authority to expel, and the policy of the legislation in respects to exclusion and expulsion is opposed to numerous appeals. And we are not disposed to hold that, where a Chinese laborer has evaded the executive jurisdiction at the frontier and got into the country, he is therefore entitled to demand repeated hearings on the facts."

The three causes were heard, each before a different commissioner. In each, one witness only was called—a Chinese person, who in each case testified that he was the uncle of the defendant. In each case the defendant, who was charged with being unlawfully within the United States, was informed of the charge against him, and was advised that he would be permitted to make a statement with or without oath, or to refuse to make any statement or to answer any question

put to him, and was entitled to a reasonable time to send for and advise with counsel, and to procure the attendance of witnesses. The result in each case was a failure to satisfy the commissioner by satis- factory proof that he was entitled to remain in the country, and the District Court affirmed the commissioner's decision. In the case of Jung Man the majority of the court seems to have reached the con- clusion that the citizenship of the defendant was established by the witness he called, and that the commissioner arbitrarily decided against him, and rejected the "clear, straightforward statement" of his wit- ness, not because he disbelieved it, but because defendant did not him- self testify. I do not so read the record. The commissioner expressly finds that defendant "has not made it appear to me that he was a sub- ject or a citizen of some other country than China," and the district judge says, "This court is not satisfied that the statement of the de- fendant's witness is true, and hence the defendant failed to sustain his contention." The "clear, straightforward statement" of the alleged uncle is extremely meager. He had not seen the defendant for 10 years. When he last saw him (in China), defendant was only 16 years old. How the witness was able to identify the boy of 16 in the man of 26—whether by his general appearance, by any distinguishing marks, by any conversations about past events, or in any other way—he wholly failed to indicate. If the decisions of the commissioners who see and hear the witnesses are to be reversed by this court on the the- ory that such attenuated evidence, when uncontradicted, is convincing, the attempted enforcement of the Chinese exclusion laws seems likely to become a farce.